1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

PERRIS LEE,

Plaintiff,

v.

L. FUGA, et al.,

Defendants.

Case No.:  3:19-cv-0125-AJB-MDD

**REPORT AND RECOMMENDATION REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**[ECF No. 48]**

This Report and Recommendation is submitted to United States District Judge Anthony J. Battaglia pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California.

For the reasons set forth herein, the Court **RECOMMENDS** Defendants' motion for summary judgment be **GRANTED IN PART AND DENIED IN PART**.

1

# I. PROCEDURAL HISTORY

Perris Lee ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with a civil complaint filed pursuant to 42 U.S.C. § 1983.  (ECF Nos. 1, 3).  On January 16, 2019, Plaintiff filed a Complaint against nine correctional officers and one prison psychiatrist, claiming they violated his civil rights by using excessive force, failing to protect him during an emergency cell extraction, retaliating against him, failing to supervise correctional officers, and by intentionally inflicting emotional distress.  (ECF No. 1 at 1-8).[1]

On February 3, 2020, the Court granted Defendant Dr. K. Rodriguez's motion for summary judgment for failure to exhaust administrative remedies.  (ECF No. 40).  On February 4, 2020, partial judgment was entered, and Dr. K. Rodriguez was dismissed from the case.  (ECF No. 41)

On April 6, 2020, Defendants R. Calvert, R. Escamilla, L. Fuga, J. Juarez, M. Kohler, D. Madara, E. Ortegama, M. Patricio, and J. Sierra moved for summary judgment on all causes of action.  (*See* ECF No. 48).  Defendants argue that they are not liable for Plaintiff's § 1983 claims or intentional infliction of emotional distress and that they are entitled to qualified immunity.  (*Id*.).  On June 5, 2020, Plaintiff responded in opposition to Defendants' motion.  (ECF No. 50).  On June 19, 2020, Defendants replied in support of their motion.  (ECF No. 51).

---

[1] All pincite page references refer to the automatically generated ECF page number, not the page number in the original document.

19-cv-0125-AJB-MDD

## II. STATEMENT OF FACTS[2]

In September 2017, Plaintiff, an inmate incarcerated at California State Prison-Sacramento ("CSP-SAC"), was transferred to R.J. Donovan Correctional Facility ("RJD"). (ECF No. 48-4; *See* ECF No. 1 at 1). At RJD, Plaintiff was placed in a mental health crisis bed within the Central Treatment Center ("CTC"). (ECF No. 48-4 at ¶ 4).

At 3:15 a.m., Defendant Sgt. Kohler informed Plaintiff he was going to be sent on a special transport back to CSP-SAC. (ECF No. 48-10 at ¶ 4). Sgt. Kohler ordered Plaintiff to exit his cell for transport. (*Id.*). Plaintiff refused to exit his cell. (*Id.*). Sgt. Kohler left and informed the Watch Commander, Lt. Calvert, of Plaintiff's noncompliance. (*Id.*). At approximately 3:25 a.m., Lt. Calvert attempted to convince Plaintiff to exit his cell. (ECF No. 48-8 at ¶ 2-3). Plaintiff refused to exit his cell. (*Id.*).

Sgt. Kohler assembled an extraction team to remove Plaintiff from his cell for transport consisting of Defendant Officers Fuga, Patricio, Ortegama, Sierra, Escamilla, and Madara, and authorized the "controlled use of force."[3] . (ECF Nos. 48-8 at ¶4; 48-6 at ¶ 2, 48-8 at ¶ 4, 48-10 at ¶ 6, 48-11 at ¶ 2, 48-12 at ¶ 2, 48-13 at ¶ 2, 48-14 at ¶ 2, 48-15 at ¶ 2). At 3:35 a.m., Lt. Calvert began the cool down period.[4] (ECF No. 48-8 at ¶ 4). During the cool down period Lt. Calvert individually contacted Dr. K. Rodriguez, the clinical

---

[2] These material facts are taken from the parties' pertinent cited exhibits. The Court notes that the overwhelming majority of facts are disputed by the parties. Disputed material facts are discussed in further detail where relevant to the Court's analysis as it relates to a specific cause of action. Facts that are immaterial for purposes of resolving the current motion are not included in this recitation.

[3] A controlled use of force is used when "force is necessary but does not involve an imminent threat to subdue an attacker, effect custody or to overcome resistance, the force shall be controlled. *See* CDRC DOM 51020.12.

[4] A "cool down" period must precede a "controlled use of force" to allow the inmate an opportunity to comply with custody staff orders. *See* CDRC DOM 51020.12.

19-cv-0125-AJB-MDD

psychologist, and Associate Warden J. Juarez, the Administrative Officer of the day, to inform them of Plaintiff's refusal to exit his cell for transport. (*Id.*).

At 4:45 a.m., Associate Warden J. Juarez arrived at the facility, and tried to convince Plaintiff to exit his cell for the special transport.  (ECF No. 48-4 at ¶ 12).  Again, Plaintiff refused to exit his cell.  (*Id.*).  At 4:52 a.m., Dr. K. Rodriguez arrived at the CTC, and attempted to persuade Plaintiff to comply and exit his cell.  (ECF No. 48-9 at ¶ 3).  While speaking to Plaintiff through the food port of the cell door, Dr. K. Rodriguez observed Plaintiff squatting down and cutting his left arm with an unidentified object.  (*Id.* at ¶ 4).  Dr. K. Rodriguez alerted Sgt. Kohler of this observation.  (*Id.* at ¶ 5).

Just prior to 5:13 a.m., Sgt. Kohler ordered the team to remove Plaintiff from his cell with "immediate use of force" due to Plaintiff injuries.[5]  (ECF No. 48-10 at ¶ 7; ECF Nos. 48-8 at ¶ 5, 48-10 at ¶ 7).  At 5:13:23 a.m., Dr. K. Rodriguez explained that Plaintiff was scratching himself.  (ECF No. 48-16 at video timestamp 5:13:25-5:13:40).  At 5:13:45 a.m., Sgt. Kohler approached Plaintiff's cell and ordered him to "cuff up" and submit to handcuffs six times. (ECF No. 48-16 at video timestamp 5:13:45-5:14:03).  Plaintiff's response, if any, is not intelligible.  (*Id.*).  Plaintiff "was packing when the Defendants arrived" at his cell door.  (ECF No. 50 at 2).  At 5:14:10 a.m., Sgt. Kohler opened the cell door and the extraction team entered.  (ECF No. 48-16 at video timestamp 5:14:10).

The five-man extraction team took roughly 25 seconds to restrain Plaintiff.  (ECF No. 48-16 at video timestamp 5:14:10-5:14:33).  The video

---

[5] An immediate use of force is used "when time and circumstances do not permit advanced planning, staffing and organization, and an imminent threat exists to institution/facility security or safety of persons . . . ."  CDRC DOM 51020.11.

4

recording of the incident blocks any view of Plaintiff.  (*See id.*).  Plaintiff was then escorted to the transport vehicle and was placed on special transport to CSP-SAC.  (ECF Nos. 48-10 at ¶ 10, 48-14 at ¶ 10-11).

### III. LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A judgment must be entered, "if, under the governing law, there can be but one reasonable conclusion as to the verdict."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986).  "If reasonable minds could differ," judgment should not be entered in favor of the moving party.  *Id.* at 250-51.

The parties bear the same substantive burden of proof as would apply at a trial on the merits, including plaintiff's burden to establish any element essential to his case.  *Id.* at 252; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  The moving party bears the initial burden of establishing the basis of its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate absence of a genuine issue of material fact.  *Celotex Corp.*, 477 U.S. at 323.  The moving party has "the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material lodged must be viewed in the light most favorable to the opposing party."  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth."  *S.E.C. v. Seaboard Corp.*,

19-cv-0125-AJB-MDD

677 F.2d 1301, 1306 (9th Cir. 1982).  More than a "metaphysical doubt" is required to establish a genuine issue of material fact.  *Matsushita Elec. Indus. Co., Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The burden then shifts to the non-moving party to establish, beyond the pleadings, that there is a genuine issue for trial.  *See Celotex Corp.*, 477 U.S. at 324.  To successfully rebut a properly supported motion for summary judgment, the nonmoving party "must point to some facts in the record that demonstrate a genuine issue of material fact and, with all reasonable inferences made in the plaintiff['s] favor, could convince a reasonable jury to find for the plaintiff[]."  *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000) (citing Fed. R. Civ. P. 56; *Celotex Corp.*, 477 U.S. at 323; *Liberty Lobby*, 477 U.S. at 249).

## IV. DISCUSSION

Defendants move for summary judgment on Plaintiff's claims against them for excessive force, failure to supervise, retaliation, or intentional infliction of emotional distress.  (*See* ECF No. 48).  Specifically, Defendants move on the grounds that their use of force was reasonable and that they are entitled to qualified immunity.  (*Id.*).  Plaintiff opposes entry of judgment in Defendants' favor asserting there are genuine issues of material fact on all of Plaintiff's claims.  (*See* ECF No. 50).

### A. Eighth Amendment Excessive Use of Force

Plaintiff claims Defendants used excessive force against him in violation of his Eighth Amendment rights.  The Eighth Amendment prohibits the infliction of cruel and unusual punishment.  U.S. Const. amend. VIII.  To prevail on an Eighth Amendment claim under § 1983, the plaintiff must show that objectively he suffered a "sufficiently serious" deprivation.  *Farmer v.*

19-cv-0125-AJB-MDD

*Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  The plaintiff must also show that subjectively defendants had a culpable state of mind in allowing or causing the plaintiff's deprivation to occur.  *Id.* (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

Objectively, Plaintiff alleges he received a black eye, swollen hands, and bruised his ribs as a result of the extraction.  The parties do not dispute that Plaintiff's injuries are sufficiently serious.  Thus, the Court turns to the subjective prong.

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley v. Albers*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson*, 503 U.S. at 6-7 (citing *Whitley,* 475 U.S. 312).  To determine whether the force used was excessive, courts consider factors such as: 1) the need for the application of force, 2) the relationship between the need and amount of force that was used, 3) and the extent of injury inflicted.  *Whitley*, 475 U.S. at 321.  Courts should also consider "[e]qually relevant [] factors as: 4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them, and 5) any efforts made to temper the severity of a forceful response."  (*Id.*).

The first *Hudson* factor to consider is the need for the application of force.  *See Hudson*, 503 U.S. at 7.  The Ninth Circuit has ruled that the use of force may be necessary "if a prisoner refuses after adequate warning to move from a cell or upon other provocation presenting a reasonable possibility that slight force will be required."  *Spain v. Procunier*, 600 F.2d 189, 195 (9th Cir.

7

1    1979).  It is undisputed that Plaintiff was ordered for transfer on a special

2    transport to CSP-SAC, that he refused to exit his cell for transfer on

3    numerous requests, and that he was scratching himself.  There is no material

4    question of fact in dispute that there was a need for the extraction team to

5    forcibly remove Plaintiff from his cell because he was noncompliant with

6    Defendants' orders and was injuring himself.  *See Stanfill v. Talton*, 851 F.

7    Supp. 2d 1346, 1371 (E.D. Georgia March 29, 2012) (inmate's history of self-

8    mutilation, coupled with his most recent cutting incident made it clear there

9    was a need for some application of force).

10       This case, however, falls on *Hudson's* second factor: the relationship

11   between need for force and the amount of force used.  *See Hudson*, 503 U.S.

12   at 7.  Correctional officers may only use force in proportion to the need in

13   each specific situation.  *Spain*, 600 F.2d at 195.  If the force officers use is so

14   "disproportionate to that required that it suggests deliberate sadism," it

15   violates the Eighth Amendment.  *Rodriguez v. Evans*, 2009 U.S. Dist. LEXIS

16   65525, at *26 (N.D. Cal. July 27, 2009).

17       The Court cannot determine whether Defendants' use of force was

18   reasonable.  Defendants maintain that Plaintiff was resisting Defendants'

19   attempts to restrain him. (*See* ECF Nos. 48; 48-11 at ¶¶ 7-8; 48-12 at ¶¶7-8;

20   48-13 at ¶ 9).  In comparison, Plaintiff declares that he was compliant and

21   did not resist.  (*See* ECF Nos. 48-3 at 15, 50).  The only objective evidence

22   presented is the video recording.  The video footage does not show whether

23   Plaintiff resisted or was compliant.  (ECF No. 48-16 at video timestamp

24   5:14:10-5:14:13).  Defendants obscured any view of Plaintiff during the

25   extraction, aside from brief glimpses of Plaintiff's limbs.  (*See Id.* at video

26   timestamp 5:14:16-5:14:48).  Accordingly, there are genuine issues of

27

8

material fact and Defendants are not entitled to summary judgment on Plaintiff's claim for the use of excessive force.

## B. Failure to Supervise and Protect, Intentional Infliction of Emotional Distress, and Qualified Immunity

In light of the issues of material fact relating to Defendants' use of force, the Court cannot determine whether Defendants failed to supervise the extraction team, failed to protect Plaintiff from unreasonable use of force, or whether Defendants intentionally inflicted emotional distress. Accordingly, Defendants are not entitled to summary judgment as these claims. Similarly, the court cannot find that Defendants are entitled to qualified immunity.

## C. First Amendment Retaliation

Plaintiff also claims Defendants retaliated against him in violation of the First Amendment. (*See* ECF No. 1 at 7). Plaintiff claims that Dr. K. Rodriguez retaliated against him for threatening to file an inmate grievance against her. (*Id.* at 5-7). Specifically, he claims that Dr. K. Rodriguez lied about Plaintiff scratching himself so that the extraction team would forcibly remove him from his cell. (*Id.*). Defendants argue that they did not take adverse action against Plaintiff and instead acted with a legitimate correctional purpose to prevent him from further injuring himself and to transfer him to CSP-SAC. (*See* ECF No. 48).

Upon entering a prison, inmates do not lose all their First Amendment Rights. See *Remmers v. Brewer,* 475 F.2d 52 (8th Cir. 1973). The First Amendment protects against "deliberate retaliation" by prison officials against an inmate's exercise of his right to petition for redress of grievances. *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989). Such conduct is actionable even if it would not otherwise rise to the level of a

9

19-cv-0125-AJB-MDD

constitutional violation because retaliation by prison officials may chill an inmate's exercise of legitimate First Amendment rights. *Thomas v. Carpenter*, 881 F.2d 828, 830 (9th Cir. 1989). A prisoner suing prison officials for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action did not advance legitimate penological goals. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995); *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994); *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985).

Filing administrative grievances is a protected activity, and it is impermissible for prison officials to retaliate against prisoners for engaging in these activities. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). However, it is undisputed that Plaintiff was scratching himself. Defendants did not extract Plaintiff in retaliation for threating to file an inmate grievance. Rather, the evidence shows Defendants extracted Plaintiff to prevent him from further injuring himself. Accordingly, Defendants are entitled to summary judgement on Plaintiff's First Amendment retaliation claim.

## VI. CONCLUSION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Court issue an Order: (1) Approving and Adopting this Report and Recommendation; (2) **GRANTING** Defendants' motion for summary judgment as to Plaintiff's retaliation claim; and (3) **DENYING** the remainder of Defendants' motion for summary judgment.

**IT IS HEREBY ORDERED** that any written objections to this Report must be filed with the Court and served on all parties no later than **October**

10

19-cv-0125-AJB-MDD

**28, 2020**.  The document should be captioned "Objections to Report and Recommendation."

 **IT IS FURTHER ORDERED** that any reply to the objection shall be filed with the Court and served on all parties no later than **November 4, 2020**.  The parties are advised that the failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998).

 **IT IS SO ORDERED.**

Dated: October 13, 2020

Hon. Mitchell D. Dembin
United States Magistrate Judge

11

19-cv-0125-AJB-MDD